In re Paul Thomas DEMOS
II, Applicant.

No. 84–1777.

District of Columbia Court of Appeals.

Argued En Banc Oct. 6, 1989.
Decided Aug. 9, 1990.

---

Paul T. Demos, II, pro se, and Paul T. Demos, Sr., for applicant.

Charles L. Reischel, for Committee on Admissions. Lloyd N. Moore, Jr., entered an appearance for Committee on Admissions.

Before ROGERS, Chief Judge, and NEWMAN, FERREN, BELSON, TERRY, STEADMAN, SCHWELB and FARRELL, Associate Judges.

## ON REHEARING EN BANC

BELSON, Associate Judge:

Paul Thomas Demos II is an applicant for admission to the Bar of the District of Columbia. The Committee on Admissions recommended unanimously that Demos' application be denied, and has twice reiterated that recommendation after further proceedings. The Committee found that Demos failed to demonstrate his good moral character and fitness to practice law. We agree with the Committee's reasons for recommending denial of admission. Accordingly, we deny the application of Paul Thomas Demos II for admission to the Bar of the District of Columbia.[1]

Demos' efforts to gain admission to the Bar of the District of Columbia began after he received a J.D. degree from the Potomac School of Law in 1982. He was unsuccessful in both the July 1982 and the February 1983 District of Columbia Bar examinations. He petitioned, however, for a regrading of the February 1983 examination, and received a passing score.

In the first of its unanimous recommendations against Demos' admission, the Committee considered behavior by Demos in the state of New Mexico. While working as a law clerk in the office of his father, a member of the bars of New Mexico and the District of Columbia, Demos participated as an attorney in the deposition of a witness in a workers' compensation action on June 24, 1983. In this deposition, Demos, as the sole representative of his law firm present, asked questions of the person being deposed and failed to inform opposing counsel of his non-lawyer status. His irregular participation in that deposition while not admitted to practice resulted in a hearing on June 27, 1983, before the Honorable Michael Martinez, a state trial judge of the state of New Mexico. In the course of the hearing before Judge Martinez, Demos represented that he had already passed the D.C. bar exam, even though in fact he was still awaiting action on his petition to regrade his bar exam essays in hopes of improving his score of 69.95 to a passing grade, and also represented that he had graduated from Antioch Law School when instead he had graduated from the Potomac School of Law. Judge Martinez eventually held Demos in contempt of court because of his participation in the deposition. The court, however, permitted Demos to purge the contempt by paying the expenses of the opposing party.

In its original consideration of this matter, the Committee on Admissions addressed certain misrepresentations contained in Demos' response to the supplemental questionnaire sent to successful takers of the D.C. bar examination. Demos' answers failed to disclose that he had been held in contempt by Judge Martinez, although the form clearly called for revelation of that action. Demos presented evidence, which the Committee accepted, that the form had been filled out in his behalf by a friend while Demos was absent on vacation. The Committee did not view Demos' response to the supplemental questionnaire as a deliberate effort to conceal information, but rather as a failure to exercise due care in the handling of his affairs. It concluded that its submission did "not

1. A division of this court initially considered Demos' bar application in *In re Demos,* 564 A.2d 1147 (D.C.1989) (ordered Demos admitted to the Bar of the District of Columbia). That decision was issued and simultaneously vacated on May 26, 1989. *Id.* at 1155.

rise to the level of dishonesty or a lack of good moral character." Committee on Admissions Findings and Conclusions on Moral Character and Fitness to Practice, December 18, 1984, at 6.

The Committee did find, however, that the evidence supported a finding that Demos had engaged in the unauthorized practice of law in the State of New Mexico.[2] *Id.* The Committee recognized, however, that the applicant's father and another attorney in his office shared much of the blame for Demos' unauthorized practice of law. *Id.* It also found that "applicant was not honest and forthright in his testimony at the hearing [before Judge Martinez], as well as before the Committee at [its] formal hearing."[3] *Id.* The Committee went on to conclude that Demos had deliberately attempted to mislead the New Mexico court and that the record as a whole "shows that he exhibited a callous disregard for the truth while under oath." *Id.*

While Demos' application for admission and the report of the Admissions Committee were pending before this court, the Committee received information from the Character and Fitness Division of the Board of Law Examiners of the Supreme Court of Texas regarding (1) another judgment of contempt against Demos that was issued March 6, 1985, by the County Court of Rockwall County, Texas, (2) a conviction for assault entered against Demos on that same date by that court,[4] and (3) an investigation by the State Bar of Texas into possible unauthorized practice of law by Demos.[5] This court authorized the Committee on Admissions to supplement its record regarding Demos in view of the additional information from Texas. A further formal hearing was scheduled for April 1, 1986, but Demos failed to appear. The Committee thereafter issued its Supplemental Report and Recommendation on March 18, 1987, signed for the Committee by its Chair, which expressed, without dissent, its continued unwillingness to certify Demos' admission.

2. The record before this court does not indicate that this issue was passed on by any New Mexico Bar authority.

3. The Admissions Committee noted that during his contempt hearing before Judge Martinez, Demos was "vague and hesitant" in answering questions about the signatures on several documents filed with the court. He was unwilling to identify certain signatures as his own or those of his father, for whom he was working at the time. Subsequently, at a hearing before the Committee on Admissions, Demos admitted he was vague in his answers to the New Mexico court. He also admitted to signing the documents in question and claimed that fear, and a desire to protect his father, prompted his equivocal answers in New Mexico. Demos has suggested that the hearing before Judge Martinez was irregular in that it should have been held before a different judge, and that he did not have adequate time to prepare for it. Before the Committee, Demos first answered, under oath, that he had misinformed the New Mexico court that he was a graduate of Antioch Law School because he had spent less than six months at the Potomac School of Law. Later at the same hearing, he acknowledged that he had attended the Potomac School of Law for about a year.

4. Demos' assault conviction in the Rockwall County Court was reversed, not on the merits, but on the basis of improper venue. Judgment of Justice Ted M. Akin, Court of Appeals Fifth Supreme Judicial District of Texas at Dallas (Dec. 2, 1985).

5. The State Bar of Texas reached no conclusion regarding the allegation of unauthorized practice in that state, nor did the Admissions Committee. The Texas investigation was prompted by a grievance filed by Ms. Karolyn Craft, a former client of the law office of Demos' father. According to Ms. Craft, Demos represented her in a bankruptcy action. In a deposition taken by the Character and Fitness Division of the Board of Law Examiners of the Supreme Court of Texas, she testified that Demos' conduct led her to believe that he was an attorney. She also accused Demos of misappropriating her television set and VCR for his own personal use. According to Ms. Craft, the management of her former apartment building had confiscated the property when she was unable to pay her rent. When she attempted to retrieve the property, she testified, Demos told her it was "gone". Ms. Craft went to the management office that same day and learned that Demos had retrieved the property almost two weeks earlier. She later found the VCR in Demos' office and her TV in the living room of one of Demos' friends. In response to these accusations, Demos asserted that Ms. Craft's testimony is untrustworthy because of her prior credit problems and observed that the "property in question was a five year old television and VCR, with a value of less than $200.00." Supplemental Brief for the Applicant at 17.

Subsequently, Demos informed the Committee that he had not received notice of the second formal hearing and, consequently, the Committee scheduled a third formal hearing for September 17, 1987. Demos appeared and offered evidence at that hearing. Thereafter, in its Second Supplemental Report and Recommendation dated May 23, 1988, the Committee evaluated Demos' explanation of the matters that had arisen in Texas, and then reevaluated his application in light of pertinent case law and the rules of this court. The Committee recommended, once again without dissent, that the court deny admission to Demos.

In its discussion, the Committee indicated that it remained of the opinion that the entry of the Texas judgment of contempt against Demos "is evidence of the applicant's lack of respect for the judiciary and reflects poorly upon his competence to comport himself in the manner expected of a member of the District of Columbia Bar." Second Supplemental Report, May 23, 1988, at 6. The Committee also expressed its grave concern about statements in his brief which, in the Committee's view, indicated his lack of respect for the judiciary. The Committee was referring to the following passage in Demos' supplemental brief in support of his application for admission:

Furthermore, the Applicant is in agreement with the Committee's statement that "his actions shows (sic) his lack of respect for the Rockwall County judiciary[."]

The Applicant cannot respect a judiciary system set on political favors, a system in which the judge has no legal qualifications, of one that uses the law for their own personal gain, and on (sic) which attempts to intimidate and humiliate those who are willing to speak the truth.

The Applicant further states that he cannot respect such a system anymore tha[n] he can respect a government that defies its own laws and constitution by supplying arms and money to the rebels of Nicaragua, by maintaining secret bank accounts, and justifies its deception by decaring (sic) that they cannot remember.

The Applicant further states that he cannot have respect for any institution that is undeserving of its (sic) respect. The Applicant states that for this he does not need to apoligize (sic).

Applicant's supplemental brief at 15. The Committee observed that "Mr. Demos' explanation that these statements were made in anger and are not indicative of his true respect for the judicial system ... did little to quiet the Committee's concerns." Committee on Admissions Second Supplemental Report and Recommendation of May 23, 1988, at 6.

The Committee went on to distinguish Demos' case from our recent decisions on the applications of Manville, Strauss, and Brooks. *See In re Manville (Manville II)*, 538 A.2d 1128 (D.C.1988) (en banc). Remarking that in those instances, this court saw fit to admit individuals who had been convicted of serious felonies, the Committee observed:

In those cases, a considerable period of time had passed since the applicants' criminal behavior, there was substantial evidence of rehabilitation and there was ample evidence of remorse on the part of the applicants. These indicia are lacking in Mr. Demos' case. His conviction occurred within the last few years, he has shown little evidence of remorse and has presented no evidence to the Committee of any rehabilitative efforts on his part.

Committee on Admissions Second Supplemental Report and Recommendation of May 23, 1988, at 6. The Committee then alluded to Demos' earlier behavior in New Mexico, and concluded that it remained unwilling to certify his admission to this court.

This statement of the proceedings that led to the unanimous recommendations of the Committee on Admissions lays the necessary groundwork for delineating the reasons we agree with the Committee's recommendation not to admit Demos to our bar. The sum of several events in the State of New Mexico casts serious doubt upon the applicant's character. These include his being held in contempt by Judge Martinez,

his lack of candor before the New Mexico court as found by the Committee, and his unauthorized practice of law in the State of New Mexico as found by the Committee. There is also the observation of the Committee that it was convinced that the applicant had not been honest and forthright in his testimony before the Committee at its formal hearing. Report of December 18, 1984, at 6. This conclusion followed the Committee's opportunity to hear the lengthy testimony of the applicant and to observe him firsthand as he answered a number of questions about his past behavior. As we said in *Manville I*,

> we accept findings of fact made by the Committee unless they are unsupported by substantial evidence of record. *See In re Heller*, 333 A.2d 401, 402 (D.C.) (per curiam), *cert. denied*, 423 U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975). *We also make due allowance for the Committee's opportunity to observe and evaluate the demeanor of the applicant where relevant, e.g., with regard to such attitudes as sincerity or remorse.* Finally, we afford the Committee's recommendations some deference, since the Committee has been constituted as an arm of this court to deal regularly with issues concerning admissions to the bar and exists for the express purpose of making recommendations to the court. Nevertheless, the ultimate decision regarding admission or denial of admission remains for this court to make.

*In re Manville (Manville I)*, 494 A.2d 1289, 1293 (D.C.1985) (emphasis added) (footnote omitted). While the court, sitting en banc and as a panel, has observed Demos firsthand at oral argument on appeal, these opportunities were not nearly so extensive as those afforded members of the Committee. They did not cause us to question the Committee's evaluation of the applicant.

Another aspect of Demos' background that we must consider is the holding by the County Court of Rockwall County, Texas that Demos was in contempt of court. In this regard, it is important to distinguish our decisions in *Manville I* and *Manville II, supra*. In applying *Manville II*'s holding, it should be emphasized that in evaluating the application of a person who has a criminal conviction in his background, there is much more involved than simply weighing the seriousness of that conviction alongside the offenses committed by Manville, Brooks, and Strauss, and then assigning the applicant's conviction a weight commensurate with its relative seriousness. Our en banc opinion in *Manville II* is not a signal that henceforth it will be relatively easy for persons who have committed offenses less heinous than manslaughter, armed robbery, or illegal drug transactions to become members of the District of Columbia Bar. The Committee's analysis of the instant application explains why it is not.

In comparing Demos' application to the three applications involved in *Manville II*, the Committee on Admissions appropriately recognized that in *Manville II*, "a considerable period of time had passed since the applicants' criminal behavior, there was substantial evidence of rehabilitation and there was ample evidence of remorse on the part of the applicants." Committee on Admissions Second Supplemental Report and Recommendation of May 23, 1988, at 6. Indeed, in the case of Manville himself, we emphasized in our en banc opinion that he had "demonstrated a remarkable and thorough rehabilitation" in the fourteen years following his conviction of a felony. *Manville II, supra*, 538 A.2d at 1134.

In *Manville I*, we set forth a list of eleven factors, not meant to be exhaustive but rather illustrative, that could be used to assess the moral fitness of applicants whose backgrounds were marked by criminal convictions.[6] After referring to our

---

6. We identified the following factors:
    1. The nature and character of the offenses committed. ·
    2. The number and duration of offenses.
    3. The age and maturity of the applicant when the offenses were committed.

    4. The social and historical context in which the offenses were committed.
    5. The sufficiency of the punishment undergone and restitution made in connection with the offenses.

holding in *Manville I*, the Committee in this case observed that Demos' conviction had occurred within the last few years, that he "had shown little evidence of remorse, and [had] presented no evidence . . . of any rehabilitative efforts."[7] Committee on Admissions Second Supplemental Report and Recommendation of May 23, 1988, at 6.

As we noted in *Manville I, supra*, 494 A.2d at 1295 "courts tend to consider the facts of each case in light of the totality of the circumstances surrounding an application for bar admission." It is appropriate here to consider all the evidence before the Committee. Although it is apparent that Demos would not have to carry as heavy a burden as the applicants in *Manville II, supra*, it is still incumbent upon him to demonstrate his good moral character. D.C.App.R. 46(e), as it read at the time of Demos' application, stated that "[t]he burden of demonstrating, by a preponderance of the evidence, that an applicant is qualified and fit to practice law in the District of Columbia shall be upon the applicant."[8] Prior felony convictions are not the only sorts of blemishes that can lead to questions about an applicant's good moral character. Unlike the applicants in *Manville II, supra*, who submitted extensive proof of rehabilitation and good character to the Committee, the principal evidence of good moral character that Demos has submitted consists of, by our count, nineteen affidavits, of which eight are identical, each less than a page long, and perfunctory.[9] The Committee questioned the authenticity of these eight affidavits because they are not sealed with jurats. Considering the entire record, the Committee on Admissions concluded that this applicant had not made the requisite showing of good moral character by a preponderance of the evidence. Our consideration of the record leads us to the same conclusion.

Another aspect of these proceedings deserves comment. Demos' actions suggest not only that he lacks respect for the judiciary, but also that he is unwilling to acknowledge that any of his actions amounted to misconduct. The whole of Demos' conduct makes it understandable that the Committee questioned whether Demos is capable of discharging the responsibilities of the legal profession in an acceptable

6. The grant or denial of a pardon for offenses committed.

7. The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period.

8. The applicant's current attitude about the prior offenses (*e.g.*, acceptance of responsibility for and renunciation of past wrongdoing, and remorse).

9. The applicant's candor, sincerity and full disclosure in the filings and proceedings on character and fitness.

10. The applicant's constructive activities and accomplishments subsequent to the criminal convictions.

11. The opinions of character witnesses about the applicant's moral fitness.

*In re Manville I, supra*, 494 A.2d at 1296–97 (footnotes omitted).

7. In his brief, Demos asserts that since the contempt holding he has owned his own business and has been involved in local elections and community service. These assertions, however, without more substantiation, are insufficient evidence of rehabilitation.

8. D.C.App.R. 46(e) was amended, effective August 1, 1989, and now requires a bar applicant to prove his or her "good moral character and general fitness to practice law" by "clear and convincing" evidence.

9. Four of the other eleven affidavits are from Demos himself, his father, a family friend (Jose R. Baca), and Edwin L. Felter, a retired New Mexico Supreme Court Justice. Five others, signed in September, 1987, are from various personal and professional acquaintances of Demos. The other two affidavits are from friends of Demos who were responsible for the inaccurate responses to the Supplemental Questionnaire; their statements are primarily directed toward explaining those events (Charles A. Brown and Kelley Moss). Demos has at various times stated differing numbers of affidavits he has filed with this court and with the Admissions Committee, at one time saying 60, at another "almost 100." At oral argument en banc, Demos was unable to state how many affidavits he had filed, in part, because he had not kept copies of these affidavits. In his most recent supplemental brief, filed November 9, 1989 with this court, Demos cited a figure of 60 affidavits. Demos, however, did not attach copies or provide this court with any additional documentation to confirm this number. The nineteen affidavits discussed here are the only affidavits in the record before the court.

fashion. As the Committee pointed out, "[g]iven the applicant's earlier problems regarding the unauthorized practice of law in the State of New Mexico, the Committee fails to understand how Mr. Demos could permit even the appearance of a similar situation to arise regarding his activities in the State of Texas." Second Supplemental Report of May 23, 1988 at 6–7.[10]

We comment also on the tenor of some of the pleadings filed by Demos. In his initial brief of April 23, 1985, Demos declared with respect to the Committee's actions that "[t]here appears to be a strong case of personal bias" against him. He proffered no substantial basis for that serious charge. Moreover, Demos has asserted that the Committee has "attempt[ed] to mislead" the court in its findings regarding his character. In a June 19, 1989, filing, Demos maintained that the Committee "attempted to mislead and misdirect this court by *falsely insinuating* that the Applicant is guilty of incenuious (sic) acts equal or greater than those of Manville, Strauss, Brooks" (p. 11, emphasis added). Further, in his Supplemental Brief in Support of Application for Admission, apparently submitted April 27, 1987, he made what can be characterized only as a veiled suggestion that the Committee fabricated proof that he had been notified by letter of a scheduled April 1, 1986, hearing to consider information received from Texas authorities.[11]

An applicant for admission is entitled to argue vigorously that the Committee erred in its findings or recommendation. It would, however, take a far more convincing showing than is made here for us even to consider concluding that the Committee was motivated by personal animus against an applicant or that it sought to mislead the court and knowingly convey false or misleading information to it about the applicant's fitness and character.

If there should ever be any substantiation of the existence of bias or misconduct on the part of a committee appointed by this court, we would take the matter most seriously. When such allegations are made, however, without substantiation, they serve no constructive purpose in a proceeding of this type.

Our consideration of the entire record leaves us unpersuaded that Demos possesses "those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility, that have ... been compendiously described as [the] 'moral character' necessary for the practice of law." *Schware v. Board of Bar Examiners,* 353 U.S. 232, 247, 77 S.Ct. 752, 761, 1 L.Ed.2d 796 (1957) (Frankfurter, J., concurring).

We, therefore, agree with the unanimous recommendation of our Committee on Admissions, and deny Demos' application for admission to the Bar of the District of Columbia.

*So ordered.*

FARRELL, Associate Judge, concurring:

It is evident that what divides the en banc majority and the dissent in this case, in considerable part, is the difference in outcome between this application for admission and the application of the lead petitioner in *In re Manville:* in that case, a person who acknowledged past conduct amounting to felony murder * was admitted to the bar; in this case, a person whose conduct, whatever else it might have been, was not nearly so heinous is denied admission. Had I been on the court at the time of *Manville,* I likely would have joined Judge Terry's dissent in holding that a prior conviction of certain serious crimes (certainly including the conduct of Manville) raises a presumption of bad moral character that must be overcome by clear and convincing evidence—"a degree of per-

10. See n. 5, *supra,* regarding the events in Texas.

11. *See* page 9 of that pleading, terming "suspius (sic) in nature" the copies of the Committee's March 11, 1986, letter to Demos and a receipt

for certified mail bearing his typed name but not dated or signed by him or postal stamped.

* *See In re Manville,* 494 A.2d 1289, 1298 (D.C. 1985) (Nebeker, J.) (statement of reasons for calling for sua sponte rehearing en banc).

suasion much higher than 'mere preponderance of the evidence,' " *District of Columbia v. Hudson,* 404 A.2d 175, 179 (D.C. 1979) (en banc) (citation omitted)—to justify admission to the bar. I also probably would have voted to deny Manville's application. In this case, however, no one has asked us to reconsider any aspect of *Manville;* moreover, there would be little point in doing so since, as Judge Belson points out, *supra* at 673 note 8, D.C.App.R. 46(e) has since been amended to adopt the clear and convincing evidence standard. Thus, although I would give less weight than the court does to the distinctions between this case and *Manville,* I otherwise join entirely Judge Belson's persuasive explanation of why we cannot in good conscience disturb the Committee on Admissions' conclusion that Demos had not made the requisite showing of good moral character, even under the lesser standard applicable to him of a preponderance of the evidence.

TERRY, Associate Judge, with whom Associate Judge NEWMAN joins, dissenting:

I cannot, in good conscience, join my colleagues in refusing to admit Mr. Demos to our bar. My views are essentially the same as those expressed in the Per Curiam opinion for the division, *In re Demos,* 564 A.2d 1147 (D.C.1989). Unlike the majority today, I believe the only matter that we may properly consider on the issue of "good moral character" is the contempt conviction in Texas, for reasons set forth in the division opinion. Though it cannot be ignored entirely, I think the contempt conviction is too unimportant to stand in the way of his admission—especially when this court (over two dissents, including mine) saw fit to admit three convicted felons—a murderer,[1] a bank robber, and a drug pusher—in *In re Manville,* 538 A.2d 1128 (D.C. 1988) (en banc). What the court is doing today is plainly at odds with *Manville.* If we admitted the three petitioners in that case to our bar, I cannot understand why we deny admission to Mr. Demos, whose

major flaw seems to be that he has difficulty controlling his temper.

In particular, I think the majority goes too far in attaching any weight at all to the alleged unauthorized practice in New Mexico. I say this because the New Mexico authorities, who are presumably as competent as those in the District of Columbia, have never seen fit to bring charges against Mr. Demos as a result of that incident, as my colleagues acknowledge in footnote 2 of the majority opinion. If the officials with primary responsibility for enforcing New Mexico's laws against unauthorized practice concluded, for whatever reason, that Mr. Demos' case did not warrant prosecution, then I think it is beyond the province of the Committee on Admissions to reopen the case and, in effect, to find that Mr. Demos did engage in the unauthorized practice of law in New Mexico. Such overreaching by the Committee should not be countenanced by this court.

After all is said and done, I am left with the firm conviction that an injustice has been done to Mr. Demos. It would be inaccurate to describe him as a diamond in the rough; he is a good deal more rough than diamondlike. He has a volatile temperament and tends at times to speak without reflecting on the impact of what he says. He is not a particularly good writer. As another member of the court remarked at oral argument before the division, he is "his own worst enemy." But none of these traits should preclude his admission to the bar. Like my colleagues, *ante* at 674, I cannot and do not conclude "that the Committee was motivated by personal animus against [Mr. Demos] or that it sought to mislead the court and knowingly convey false or misleading information to it about [his] fitness and character." Nevertheless, I cannot help feeling that if Mr. Demos were a bit more polished or had gone before the Committee with a bit more deference (or a lot more), he would not still be fighting for admission to the bar seven years after passing the bar examination.

---

1. To be precise, I should say a "manslaughterer." Mr. Manville was originally charged with murder, but was allowed to plead guilty to the lesser included offense of manslaughter as a result of a plea bargain.

As judges we see a wide variety of lawyers in the courtroom every day. Their talents and professional skills range from brilliant to appalling. I think there is a place on that spectrum for Mr. Demos. He would be neither the best nor the worst, but on the record before us there is no reason to deny him admission to the bar.