**In re Roger Michael LINDMARK, Applicant.**

**No. 99–BG–229.**

District of Columbia Court of Appeals.

Argued Oct. 8, 1999.
Decided March 23, 2000.

Roger M. Lindmark, pro se.

John P. Dean, Washington, DC, for Committee on Admissions.

Before SCHWELB and REID, Associate Judges, and BELSON, Senior Judge.

REID, Associate Judge:

On March 1, 1999, the District of Columbia Court of Appeals Committee on Admissions ("COA") recommended that the application of Roger Michael Lindmark for admission to the District of Columbia Bar be denied. In response to this court's order to show cause why his application should not be denied, Mr. Lindmark argued, *inter alia,* that the record before the COA contains clear and convincing evidence of his "present day good moral character and fitness to practice law" in the District. Following oral argument, we asked Mr. Lindmark to submit documentation regarding the disposition of any complaints made against him in the State of California in connection with his law practice in that jurisdiction. We also asked for a current verification of his "good standing" as an attorney in California. We now conclude that Mr. Lindmark satisfies the requirements of D.C.App. R. 46(d) and (e) and thus order his admission to the District of Columbia Bar.

### FACTUAL SUMMARY

In recommending that Mr. Lindmark's application for admission to the D.C. Bar be denied, the COA stated, *inter alia:* "In this case, the combination of Mr. Lindmark's past conduct and his present attitude toward that conduct demonstrates that he does not sufficiently understand a lawyer's obligation to refrain from making baseless allegations against his adversaries." More specifically, the COA asserted that:

Mr. Lindmark's conduct during the Pennsylvania bar admission proceedings is the primary ground for our recommendation to deny his application. He repeatedly made factual statements and legal arguments that he either knew were inaccurate or for which he had no reasonable basis.[1]

---

1. In 1990, Mr. Lindmark applied to take the Pennsylvania Bar after failing several times to pass the California Bar. The Pennsylvania Board of Law Examiners refused to permit Mr. Lindmark to take the Pennsylvania Bar because it found his past and present behavior "incompatible with the standards expected to be observed by members of the Bar of the Commonwealth." In making its finding, the Pennsylvania Board relied upon Mr. Lindmark's law school disciplinary probation and his assertion that his related actions were

Although the COA's primary basis for recommending a denial of admission centered on the proceedings before the Pennsylvania bar authorities in 1990, it also took into consideration events that occurred in 1982 while Mr. Lindmark was a law student in California,[2] declaring that:

> Mr. Lindmark ... refuses to recognize that his actions were wrong, even after a judge ruled that the dean's factual allegations were true. Instead, his testimony sought to evade the issue, as he repeatedly (and unconvincingly) claimed not to be able to identify the factual statements to which the court referred. His lack of candor about the court's ruling shows that his ability to confront unfavorable findings about his own conduct remains problematic. Moreover, his efforts to dismiss the incidents that led to his disciplinary probation as the equivalent of a parking ticket betrays a fundamental lack of appreciation for the seriousness of his lies, including lies about his class standing, lies about his authority to represent other students, and the other lies detailed in the dean's letter.

Despite Mr. Lindmark's 1982 law school history, the COA recognized that "[d]ue to the passage of time, the [law school] incidents by themselves might be insufficient to preclude Mr. Lindmark's admission." Nonetheless, based on his history before

the Pennsylvania Board and, in part, his law school history, the COA recommended denial of his bar admission because "Mr. Lindmark has failed to prove by clear and convincing evidence that he possesses the requisite good moral character and general fitness to practice law in the District of Columbia...."

Contending, in part, that the record shows by clear and convincing evidence that he possesses the requisite moral character and fitness to practice law, Mr. Lindmark challenges the COA's recommendation. He points to record evidence supporting his admission to the D.C. Bar. Indeed, as the COA's brief acknowledges, Mr. Lindmark "submitted a number of references praising his character." In fact, on December 29, 1992, Mr. Lindmark sent eighteen letters of reference to the COA which had been submitted to the Pennsylvania Board. For example, a former law school classmate and then practicing attorney in New York wrote on November 20, 1991:

> I have only known [Mr. Lindmark] to be hardworking, diligent, and serious minded. In addition, I highly regard [Mr. Lindmark's] moral character and sense of honesty and integrity.

A California attorney in whose behalf Mr. Lindmark had rendered legal services, stated in November 1992:

---

proper. After he successfully passed the California Bar examination in 1992, and was admitted in June 1992 in that state, the Pennsylvania Supreme Court granted his petition for reconsideration and ordered the Board of Law Examiners to allow him to take the Pennsylvania Bar examination which he wrote in July 1992 and passed the first time. Mr. Lindmark wrote an early May 1992 letter to the Pennsylvania Board referencing "the most unprofessional, insidious and despicable harassment and treatment your Board has inflicted upon me." In mid-May 1992, he sent another letter to the Pennsylvania Board admonishing the Board for its alleged harassment and frustration of his life. Without revealing Mr. Lindmark's score on its bar examination, the Pennsylvania Board denied his bar admission, citing Mr. Lindmark's accusation that the Pennsylvania Board was biased against him because of his out-of-state resi-

dency; and his "intemperate and unprofessional conduct, including unfounded accusations against the [Pennsylvania] Board."

2. Mr. Lindmark was subjected to disciplinary probation in law school in connection with his appeal of a grade in 1982 and his efforts to obtain employment. A 1982 letter from the dean contained several charges against him, including making false allegations and statements. Mr. Lindmark filed an unsuccessful lawsuit against his law school seeking relief relating to the disciplinary probation. He filed a second lawsuit after he was physically removed from a dean's office when he protested a decision disallowing credit for an independent study project. He unsuccessfully sued the dean for assault and battery and intentional infliction of emotional distress.

I have known Mr. Lindmark for approximately eight (8) years, within the legal community of Los Angeles. On occasion, over those years, Mr. Lindmark has performed various legal work for me and my firm as a law clerk, and I have found his work to be excellent.

I do not know of any instances of bad conduct or character flaws of Mr. Lindmark which would be an obstacle or impediment to his admission to the Bar of any state. I believe that Mr. Lindmark's moral character is excellent and that he would be a credit to the bar as an attorney upon admission.

Yet another California attorney declared in November 1992:

I have known Mr. Lindmark for nearly 8 years and know him to be of high moral character. Mr. Lindmark has performed various assignments as a law clerk in connection with matters handled by our office and has performed each such assignment competently and timely.

One of Mr. Lindmark's former law professors during the 1979/80 academic year asserted:

I got to know Mr. Lindmark well and to like him. He is an idealist and a man of strong opinions. As you are probably aware from his history of litigation with [his law school], he has a tenacious personality.

[He] certainly is a fighter, but I do not know of any instance where he did an unethical act. To the contrary, I consider him a highly moral individual— someone with a strong sense of justice and a feeling of empathy for the weak and oppressed.

Another of Mr. Lindmark's former law professors, who resided in Virginia in November 1992, declared in a letter:

While I have observed [Mr. Lindmark] to be a resolute and determined individual who was not always given to quintessential diplomacy, I nevertheless have found him to be a gentleman of the highest integrity and trustworthiness.

I am aware of a disagreement he encountered with the administration of [the law school] of which he is a graduate, and that he has been subsequently admitted to the California Bar. Having an insider's perspective of [his law school] in a time frame relevant to that disagreement, I can confidently express an opinion that matters addressed in any confrontation between Mr. Lindmark and [his law school] administration resulted from a personality conflict and not from a lack of character on [Mr. Lindmark's] part. Contrary to possible suggestion to the opposite, [Mr. Lindmark] did not violate the honor code of the law school at any time he was a student [there].

Information requested by this court after the October 1999, oral argument in this matter confirmed that as of late October 1999, Mr. Lindmark is a member of the California Bar "in good standing."[3] Three complaints against him were resolved in his favor. In 1997, a former client accused Mr. Lindmark of overbilling. The State Bar of California conducted an investigation and informed Mr. Lindmark in February 1998, that: "It has been concluded that there is insufficient evidence to warrant further proceedings in this matter." In January 1998, a former client accused Mr. Lindmark of failing to return an unearned legal fee. The State Bar of California determined "that there are no grounds for disciplinary action; therefore, we are closing our file." Finally, in 1997, a former client complained that Mr. Lindmark failed to account for $2,500 advanced for costs. After investigation, the State Bar of California closed the matter without taking any action against Mr. Lindmark.

---

3. Our general practice is to permit the COA to review supplemental material. Given the delay in Mr. Lindmark's case, however, and the positive information regarding his good standing in California, the court decided not to remand this matter for further review by the Committee. Mr. Lindmark applied for admission in 1992.

## ANALYSIS

We begin with a statement of D.C.App. R. 46(d) and (e):

(d) *Moral character and general fitness to practice law.* No applicant shall be certified for admission by the Committee until the applicant demonstrates good moral character and general fitness to practice law . . . .

(e) *Quantum and burden of proof.* The applicant shall have the burden of demonstrating, by clear and convincing evidence, that the applicant possesses good moral character and general fitness to practice law in the District of Columbia.

Consistent with Supreme Court precedent, we have interpreted our rule as requiring "good character at the time of application." *In re Manville,* 538 A.2d 1128, 1132 (D.C. 1988) (en banc) (*Manville II*) (citing *Schware v. Board of Bar Examiners,* 353 U.S. 232, 246, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957)). Moreover, in *In re Mustafa,* 631 A.2d 45 (D.C.1993), we said: "In order to gain admission to the Bar, an applicant must demonstrate 'by clear and convincing evidence, that the applicant possessed good moral character and general fitness to practice law in the District of Columbia' at the time of the applicant's admission." *Id.* at 47 (quoting D.C.App. R. 46(e) and referencing *In re Manville II, supra,* 538 A.2d at 1132). While "we afford the [COA's] recommendations some deference, . . . [n]evertheless, the ultimate decision regarding admission or denial of admission remains for this court to make." *In re Manville,* 494 A.2d 1289, 1293 (D.C.1985) (*Manville I*). Moreover, we have granted admission in the past where a long period of time has elapsed since the applicant's bad behavior, and the record contains evidence of rehabilitation and remorse. Thus, we admitted the three applicants in *Manville II, supra,* because:

[T]he Committee on Admissions appropriately recognized that in *Manville II,* " 'a considerable period of time had passed since the applicants' criminal behavior, there was substantial evidence of rehabilitation and there was ample evidence of remorse on the part of the applicants.' "

*In re Demos,* 579 A.2d 668, 672 (D.C.1990) (en banc). In contrast, we denied admission to the applicant in *In re Demos, supra,* because he did not manifest good moral character at the time of his application and was "unwilling to acknowledge that any of his actions amounted to misconduct." *Id.* at 673.

After review of the record in this case, including the post-argument submission, although we cannot and do not condone Mr. Lindmark's lack of civility and his intemperate actions in the past, in light of the passage of time and Mr. Lindmark's more favorable recent record, we conclude that his most unfortunate conduct as a law student and as an applicant for admission to the Bar of Pennsylvania does not warrant denial of his current application. Unlike several of our past bar admission cases, Mr. Lindmark has never been convicted of a crime. *See,* for example, *In re Sobin,* 649 A.2d 589 (D.C.1994); *In re Polin,* 630 A.2d 1140 (D.C.1993); *In re Demos, supra; In re Manville II, supra.* Despite their past criminal convictions, we granted admission to the Bar to petitioners in three of those four cases, based upon their behavior and records after their convictions. Nonetheless, the COA maintains that, given our decisions in *In re Demos, supra,* and *In re Blair,* 665 A.2d 969 (D.C.1995) (en banc), Mr. Lindmark's application for admission should be denied. We disagree.

Mr. Lindmark's case does not mirror that of Mr. Demos. Mr. Demos had been held in contempt in New Mexico and Texas; lied about the law school that he completed; lied about having passed the D.C. Bar before he actually passed it; was convicted of assault in Texas; and was investigated by the Texas State Bar for possible unauthorized practice of law. There were charges of witness tampering and illegal

fee-splitting in Mr. Blair's case; moreover, Mr. Blair made "multifarious procedural challenges" to the [COA's] findings and recommendations, including eight discussed by this court. *In re Blair, supra,* 665 A.2d at 971–73. Unlike Mr. Lindmark's case, Mr. Blair directed all of the challenges at our COA. In addition, we determined that Mr. Blair had "exhibited a serious lack of candor" and "refused to accept responsibility for his conduct and shifted the focus at each opportunity to an asserted bias against him lurking in the Committee's proceedings and recommendation." *Id.* at 973. Over the three-year period in which Mr. Blair sought admission to the D.C. Bar, there was no change in his behavior. Mr. Lindmark's accusations against his law school administration took place in 1982, and his encounter with the Pennsylvania Board in 1992. His record since 1992 shows no blemish. He is in good standing with the California Bar, and the few complaints lodged against him have been resolved in his favor. Parenthetically, we note that the COA did not have the benefit of the "good standing" documentation from the California Bar that Mr. Lindmark submitted to this court after oral argument in this matter. Furthermore, none of the behavior that was the subject of Mr. Lindmark's Pennsylvania encounter was displayed before the COA. In addition, during oral argument, he candidly admitted that his letters to the Pennsylvania Board were "intemperate, [and] a dumb thing to do." He expressed regret for the words used in his communications, describing them as "unprofessional and inappropriate." His character letters reveal that attorneys and former law professors have found him to be a person of integrity with good legal skills. In short, we see no parallel between Mr. Lindmark's situation and that of Mr. Demos and Mr. Blair.

4. Given our disposition, we do not consider Mr. Lindmark's Due Process and First

Accordingly, we grant Mr. Lindmark's application for admission to the Bar of the District of Columbia.[4]

*So ordered.*