**In re John Doyle GREENWALD, Respondent.**

**No. 02–BG–297.**

District of Columbia Court of Appeals.

Oct. 24, 2002.

Before TERRY and REID, Associate Judges, and BELSON, Senior Judge.

PER CURIAM:

Applicant John Doyle Greenwald seeks admission to the Bar pursuant to D.C.App. R. 46(c)(3)(i). Greenwald is a member of the New York Bar and has been in private practice in the District of Columbia since 1981. His work in the District of Columbia consists primarily of representing clients before the United States International Trade Commission, the Department of Commerce, and agencies of foreign countries.

The Committee on Admissions referred Greenwald's application to the Committee on Unauthorized Practice of Law, which determined that Greenwald had engaged in the unauthorized practice of law in at least some aspects of his practice. Although initially believing in good faith that none of his practice required admission to

the District of Columbia Bar, Greenwald now acknowledges that he engaged in the unauthorized practice of law, particularly insofar as he gave legal advice from an office in the District of Columbia.[1]

The Committee on Admissions has concluded that Greenwald's years of unauthorized practice do not reflect negatively on his character and fitness to practice law, and recommends that we grant him admission to the Bar. Essentially for the reasons stated in its report, which we attach hereto and incorporate by reference, we accept the Committee on Admissions' conclusion that Greenwald possesses the good moral character and general fitness to practice law that are required by D.C.App. R. 46(d).[2] Accordingly, we adopt the recommendation of the Committee and grant Greenwald's application for admission to the Bar of the District of Columbia.

*So ordered.*

## *APPENDIX*

### *FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION OF THE COMMITTEE ON ADMISSIONS*

John Doyle Greenwald, a member of the New York Bar, has applied for admission to the District of Columbia Bar pursuant to D.C.App. R. 46(c)(3)(i), which permits an attorney who has been a member in good standing of the Bar of another juris-

---

**1.** The Committee on Unauthorized Practice did not resolve the question of whether Greenwald's representation of clients before the International Trade Commission and the Department of Commerce fell within the federal practice exception of D.C.App. R. 49(c).

**2.** *See In re Manville,* 494 A.2d 1289, 1293 (D.C.1985) ("[W]e accept findings of fact made by the Committee unless they are unsupported by substantial evidence of record. We also make due allowance for the Commit-

tee's opportunity to observe and evaluate the demeanor of the applicant where relevant, *e.g.* with regard to such attitudes as sincerity or remorse. Finally, we afford the Committee's recommendations some deference, since the Committee has been constituted as an arm of this court to deal regularly with issues concerning admissions to the bar and exists for the express purpose of making recommendations to the court.") (internal citation and footnote omitted).

diction for at least five years to be admitted without examination. Mr. Greenwald's application revealed that he had been a partner in various District of Columbia law firms since 1981 without ever being admitted to the District of Columbia Bar. The Committee referred his application to the Committee on Unauthorized Practice of Law ("CUPL") for its evaluation of whether Mr. Greenwald had engaged in the unauthorized practice of law in violation of D.C.App. R. 49. After receiving an affirmative response, this Committee convened a formal hearing pursuant to D.C.App. R. 46(f) to determine whether Mr. Greenwald possesses the requisite character and fitness for admission to the Bar. The Committee now recommends that his application be granted.

## FINDINGS OF FACT

### A. Background

Mr. Greenwald graduated from the University of North Carolina in 1967. R. 10.[3] After serving in the Peace Corps for two years, he enrolled at Columbia University Law School, from which he graduated in 1972. R. 10, 13. After his graduation from law school, he was employed as an associate at the New York firm of Sullivan & Cromwell for about a year and a half. R. 18. He was admitted to the New York Bar in 1973. R. 2.

Mr. Greenwald came to the District of Columbia in 1974, and served in several positions in the federal government for the next seven years. Between 1974 and 1979, he was an attorney advisor and later deputy general counsel in the Office of the United States Trade Representative. After that, he served as Deputy Assistant Secretary for Import Administration in the Department of Commerce until May 1981.

R. 16–17. He then began the private practice of law in the District of Columbia, serving as counsel and then as partner in the firm of Verner, Lipfert, Bernhard, McPherson and Hand until December 1983. R. 15. In January 1984, he became a partner in the firm of Wilmer, Cutler & Pickering, and has remained there. R. 14. While in private practice, Mr. Greenwald has practiced in the field of international trade law, practicing primarily before the United States International Trade Commission and the Department of Commerce.

### B. CUPL's Report

Mr. Greenwald filed his application for admission on July 12, 1995. After receiving a character report from the National Conference of Bar Examiners, this Committee referred the application to CUPL for its consideration of whether Mr. Greenwald had engaged in the unauthorized practice of law, noting his employment in private practice with District of Columbia law firms since 1981. R. 89. After exchanging correspondence with Mr. Greenwald, CUPL responded to this Committee on June 11, 1998. R. 90–93. It summarized its conclusions as follows:

> [W]e must conclude that, while some portion of [Mr. Greenwald's] practice may fall within one of the narrow exceptions to Rule 49, in the over fourteen and a half years that he has practiced in the District of Columbia before applying for admission to the Bar, he has engaged in legal work which is not specifically permitted by any of the exceptions to the Rule 49 requirement that an attorney practicing within this jurisdiction be admitted to the D.C. Bar. Thus, he has been engaged in the unauthorized practice of law.

R. 90.

---

**3.** The Committee's record in this matter will be cited as "R." followed by the page number.

CUPL noted that Mr. Greenwald had relied upon the federal practice exception to the requirement in D.C.App. R. 49 that all persons engaged in the practice of law be enrolled, active members of the District of Columbia Bar. That exception, contained in former D.C.App. R. 49(c)(4), provided:

Nothing herein shall prohibit any attorney from practicing before any department, commission, or agency of the United States to the extent that such practice is authorized by any rule or regulation of any such department, commission or agency, provided the person is not otherwise regularly engaged in the practice of law in the District of Columbia or is not in any manner, except as permitted by the license granted by such department, commission, or agency, holding out as authorized or qualified to practice law in the District of Columbia without having become an enrolled active member of the Bar of this court. This rule shall not be construed to repeal, supersede or modify any law, rule or regulation which relates to practice before any department, commission or agency of the United States.[4]

CUPL noted that Mr. Greenwald had asserted that rules of the International Trade

Administration of the Department of Commerce and of the United States International Trade Commission authorized his practice before those agencies. CUPL concluded that it was "by no means clear to this Committee that [Mr. Greenwald's] practice before those agencies ... is authorized by such rules or that such rules support his assertion that his practice falls within this exception to Rule 49." R. 92.

Although it believed that "some portion of his practice may fall within one of the narrow exceptions to Rule 49," R. 90, CUPL ultimately did not decide whether his practice before federal agencies was eligible for the federal practice exception: "The Committee need not commit its resources to resolve this question since other aspects of Mr. Greenwald's practice are clearly outside of the scope of Rule 49." *Id.*

CUPL identified two "other aspects" of Mr. Greenwald's work that were not covered by any exceptions to former Rule 49: certain matters that Mr. Greenwald described as " 'non-trade work ... involving international economic issues of one sort or another' " (which Mr. Greenwald had described as "minimal") and his representation of clients before agencies of various foreign countries. R. 92. CUPL interpreted Mr. Greenwald's description of the "non-trade work" as an acknowledgment that it was not covered by the federal agency exception, a position with which it agreed. *Id.* It also concluded that his work before foreign tribunals was ineligible for the federal agency exception. Mr. Greenwald had described that work as "trade work," arising under foreign laws that were similar in all relevant respects to the international trade laws of the United States. CUPL noted that during the course of such representations, "he provided legal advice and performed other functions for clients operating from his office in Washington, D.C." R. 93. It concluded that the federal agency exception did not exempt entire subject matters from Rule 49. "[T]he exception applies not to a particular subject matter, but to the forum." *Id.* Because the federal agency exception was limited to matters pending before

---

4. The quoted text is from the former D.C.App. R. 49, which was applicable to Mr. Greenwald's activities during the period at issue.

The current version of the federal practice exception is found at D.C.App. R. 49(c)(2).

agencies of the federal government, it was inapplicable to the giving of legal advice and providing representation in connection with foreign proceedings. *Id.*

CUPL noted that Mr. Greenwald had described his practice in his application for admission as " 'limited to international trade law issues before agencies of the Federal government . . . and the Court of International Trade (in New York) and the Court of Appeals for the Federal Circuit.' " R. 91, quoting R. 53. That statement appears in a portion of the application requiring the applicant to "[s]tate the name and address of three references in every locality where you have practiced." R. 52–53. Mr. Greenwald answered the question by providing references from New York and the District of Columbia on separate pages, *id.*, with the language quoted by CUPL appearing on the page with the District of Columbia references. R. 53.

CUPL noted that Mr. Greenwald had provided more detailed descriptions of his practice in his correspondence with CUPL, and those descriptions included matters other than representing clients before federal agencies dealing with international trade matters. For example, Mr. Greenwald informed CUPL that he had represented clients before foreign government agencies, including the Commission of the European Communities, the Australian Customs Service and Antidumping Authority and the Korean International Trade Commission. R. 91. It also noted that he had described various counseling he had done for clients on certain international trade issues, which were not the subject of actual proceedings before any federal agency. *Id.* It also noted that he had informed CUPL that he had performed "minimal" "non-trade work." R. 92. CUPL expressed concern that Mr. Greenwald's omission of those matters from the

description of his practice in the application reflected an "apparent lack of candor." R. 93.

CUPL concluded that Mr. Greenwald's violation of Rule 49 was "consciously indifferent" and that his response to its inquiries was "less than forthcoming." *Id.*

## C. The Evidence At This Committee's Hearing

After receiving CUPL's report, a subcommittee of this Committee scheduled an informal meeting with Mr. Greenwald. R. 98–102. After that meeting, the Committee concluded that it could not recommend his admission to the Bar without a formal hearing pursuant to D.C.App. R. 46(f). R. 102. Mr. Greenwald requested a hearing, which was conducted on April 14 and May 12, 1999.

At the hearing, Mr. Greenwald did not dispute CUPL's conclusion that he had engaged in the unauthorized practice of law. R. 432–33. He defended his conduct largely on the ground that he had a good faith belief that it was not necessary for him to be admitted to the District of Columbia Bar, because he was engaged in practice before federal agencies. He testified that his belief was strengthened by the fact that the federal agencies before which he practiced did not, and do not, require that parties be represented by lawyers. R. 379–81, 396–97, 434–35, 442, 462–63.

Other attorneys at Wilmer, Cutler and Pickering shared Mr. Greenwald's view. John R. Pickering, a founder of the firm and former president of the District of Columbia Bar, testified that the firm's policy was that all the lawyers in its District of Columbia office should be members of the District of Columbia Bar. Mr. Pickering spoke regularly with Mr. Greenwald about the need to conform to the policy, and Mr. Greenwald usually would respond that he

would file his application soon. Mr. Greenwald, however, would became distracted by the press of client business and delayed filing his application. Mr. Pickering, however, did not believe that Mr. Greenwald was legally obligated to become a member of the Bar; instead, his firm's policy was based upon the belief that the firm should support the Bar by having all of its attorneys enrolled, even if they were not legally obligated to do so. R. 170–72, 176–77.

Robert Cassidy, also of Wilmer Cutler & Pickering, also regularly discussed with Mr. Greenwald the necessity of becoming a member of the District of Columbia Bar. R. 354. Mr. Cassidy, however, did so because he had encountered resistance to the firm's policy among the firm's associates, who would point to Mr. Greenwald and would inquire why he was apparently exempt from the policy. R. 354–55. Like Mr. Pickering, Mr. Cassidy believed that Mr. Greenwald was not legally obligated to be a member of the District of Columbia Bar, because he practiced before federal agencies which did not require a party's representative to be a member of any bar. R. 353–55, 360–64.[5] Mr. Robert Levy, another attorney at Wilmer, Cutler and Pickering, as well as other attorneys not associated with that firm, shared Mr. Greenwald's view. R. 142–43, 151 (Mr. Levy); R. 231, 236–38 (Thomas Wilner, Esq.).

This evidence establishes that Mr. Greenwald sincerely believed that he was not required to be a member of the District of Columbia Bar in order to practice before the Department of Commerce and the United States International Trade Commission.

Mr. Greenwald described his "non-trade work" in private practice as "minimal." R. 92. Based upon the evidence at the hearing, we find that to be an accurate description. The "non-trade work" to which he referred consisted of two matters: the first involved assisting in a real estate transaction when he first worked at Verner, Lipfert in 1981 and 1982, during which he was supervised by another partner in the firm. R. 375–76. The other matter arose when Mr. Greenwald was at Wilmer, Cutler and Pickering. Mr. Greenwald was retained by an agency of the United Nations to evaluate the fairness of a mineral rights transaction between the Government of Guinea and a private party. The firm was retained at a fraction of its usual rates, and provided economic, not legal, advice concerning the mineral development project. R. 378–79, 388–89, 438–39.

Mr. Greenwald testified that he initially was surprised by CUPL's conclusion that it was necessary for him to be admitted to the District of Columbia Bar in order to represent parties before foreign tribunals dealing with international trade matters. R. 417–18. He noted that those tribunals did not require parties' representatives to be members of any bar, let alone the bar of a jurisdiction in the United States. R. 418. *See also* R. 243–44. After reviewing CUPL's report, however, he recognized that membership in the District of Columbia Bar is necessary for anyone who gives legal advice from an office maintained in the District of Columbia. R. 418–19.

The evidence demonstrates several positive aspects of Mr. Greenwald's character. First, both those who practice with him and those who have been his adversaries describe him as scrupulously honest. Dis-

---

5. Mr. Cassidy himself practices international trade law and was familiar with the appearance of non-lawyer representatives before the International Trade Commission and the Department of Commerce.

covery in many international trade proceedings is limited, and parties may be presented with opportunities to conceal material information that may not favor their position. Mr. Greenwald has always instructed his clients and the other lawyers who work with him that all legally required information must be disclosed to the government agencies with authority over a case, regardless of whether that information is favorable or unfavorable. R. 144–45, 223–24, 343–44. Adversaries also describe him as dedicated to civility in litigation even in an area of the law characterized by hard-fought disputes. R. 224–25. He teaches international trade law at Georgetown University Law School, and often spends extra time with his students, both helping them understand the law and discussing careers in the field. R. 139, 349–50, 409, 412. Both the witnesses who testified and other who sent written recommendations to this Committee spoke highly of his integrity, professionalism and character. R. 135–36, 146 (Mr. Levy); R. 174–75 (Mr. Pickering); R. 186, 192 (Commissioner Marsha Miller of the International Trade Commission); r. 225–227 (Mr. Wilner); R. 323, 330–31 (Thomas Ehrgood, Esq.); R. 342–44, 340 (Mr. Cassidy); R. 489–90 (Susan G. Esserman, Deputy United States Trade Representative); R. 61 – 71 (responses to questionnaires from the initial character investigation).

## CONCLUSIONS OF LAW

 When faced with an applicant who has engaged in the unauthorized practice of law, this Committee's task is not to devise a punishment for that practice; instead, we consider an applicant's unauthorized practice as a factor to evaluate in determining whether the applicant has satisfied the burden of demonstrating, by clear and convincing evidence, that he or she possesses the requisite good moral character and fitness to practice law required by D.C.App. R. 46(d) and 46(e). As we previously have stated:

> We recognize that those who engage in unauthorized practice, like those who violate other laws, may do so for a variety of reasons. Some may do so innocently (*i.e.*, without knowledge or reason to know of their violation), while others may act negligently, recklessly or intentionally. An applicant's unauthorized practice may be accompanied by deceitful conduct or other evidence that an applicant lacks the character to qualify for admission to the Bar. The Committee does not believe that unauthorized practice of law should be a *per se* basis for denying an application for admission to the Bar, but rather that the facts of each case should be evaluated to determine whether, considering the totality of circumstances, the applicant's unauthorized practice is reflective of character flaws that require denial of an application for admission.

*In re Forti,* No. M.44137 (Report of the Committee on Admissions, May 20, 1997) at 17–18.

 In applying this standard, we are cognizant that the admissions process should not treat unauthorized practice so severely that it erects an insurmountable obstacle to attorneys who have violated Rule 49, but now wish to conform their conduct to the law by becoming members of the Bar. At the same time, however, if an applicant's unauthorized practice demonstrates character flaws that preclude his or her admission to the Bar, we will not hesitate to recommend that the Court of Appeals deny an application.

As CUPL found, there are three facets of Mr. Greenwald's practice that must be considered in evaluating his unauthorized practice: his practice of international trade

law before federal agencies, including both his appearances in litigated matters and his furnishing of legal advice concerning the international trade laws of the United States; his "non-trade work;" and his work before tribunals in foreign countries.

CUPL ultimately reached no conclusion about whether Mr. Greenwald's practice of international trade law under the laws of the United States violated Rule 49. R. 92. Mr. Greenwald's testimony, as well as that of Mr. Pickering, Mr. Cassidy, and others persuades us that Mr. Greenwald had a good faith basis for believing that the federal practice exception covered this aspect of his practice. Indeed, CUPL's recognition that, at the very least, resolution of this issue was more difficult than the other issues presented by Mr. Greenwald's conduct, supports our conclusion that he acted in good faith with respect to this aspect of his practice. Accordingly, we do not draw a negative conclusion concerning his character from his practice of federal international trade law.

Nor do we believe that a negative conclusion can be drawn from Mr. Greenwald's "non-trade" work. We have credited his testimony that the only legal work in this category consisted of rendering assistance on one matter soon after he joined Verner, Lipfert in 1981.[6] Because that matter was so remote in time, it can not form the basis for a negative conclusion about his present moral character and fitness to practice law.

This leaves his work before foreign government bodies. Mr. Greenwald conceded that he was giving legal advice to clients from his office in Washington in connection with those matters, and now recognizes that anyone who gives legal advice of any kind within the District of Columbia must comply with Rule 49. Based upon the testimony of Mr. Greenwald and his witnesses, however, we have found that the foreign tribunals at issue do not require a party's representative to be an attorney and that Mr. Greenwald believed in good faith that there was no requirement that anyone practicing before such tribunals needed to be admitted to the Bar here. To be sure, that belief was mistaken, as CUPL found and as Mr. Greenwald now acknowledges. But we find the evidence sufficient to support a conclusion that Mr. Greenwald acted with an honest, albeit mistaken, belief that he did not need to be a member of the District of Columbia Bar in order to undertake that work.

We must address two other aspects of CUPL's report in assessing Mr. Greenwald's character. First, CUPL was concerned about what it termed an "apparent lack of candor" in his application. R. 93. We have concluded that CUPL's concern does not warrant a negative determination about his character. The statement that troubled CUPL was not a response to a question asking for a complete description of Mr. Greenwald's practice, but rather an unsolicited addendum to a list of references. There is no evidence of an intent to deceive, and Mr. Greenwald accurately described the nature of his practice in all material respects when CUPL inquired about it, including his work before foreign tribunals.[7]

6. As noted above, Mr. Greenwald's work for the United Nations in the Guinea matter involved the giving of economic, not legal, advice. Accordingly, it did not involve the practice of law and Mr. Greenwald's giving of that advice did not violate Rule 49's prohibition against the unlicensed practice of law.

7. Although he did not initially disclose his "non-trade work" to CUPL, that work consisted of one matter that was more than fourteen

 CUPL found Mr. Greenwald to be "consciously indifferent" to his obligation to be admitted to the bar. R. 93. We agree that, even though Mr. Greenwald honestly believed that he was not acting unlawfully, he should have been more diligent in ascertaining whether his practice of law required admission to the District of Columbia Bar, and should have responded more quickly to CUPL's inquiries. The question presented, therefore, is whether his lack of diligence precludes a conclusion that he possess the good moral character and fitness to practice law required for admission to the Bar. We believe that it does not. We do not condone Mr. Greenwald's indifference to his obligation to become a member of the Bar, but find it outweighed by his good faith belief that his actions were proper (including the reasonable, albeit erroneous basis for that belief), his candid acknowledgment before this Committee that his belief was mistaken, his reputation for insisting upon honest disclosure of required information by his clients, his transmission of that value to those who work with him, his contributions as a teacher, and the favorable opinions of his character offered by attorneys and others who have worked with him or observed his work over the years.[8] Moreover, there is no evidence that Mr. Greenwald deceived anyone about his status as a non-member of the District of Columbia Bar.

### RECOMMENDATION

Mr. Greenwald should have become a member of the District of Columbia Bar a long time ago. For the reasons, stated

above, however, we do not believe that his years of unauthorized practice should disqualify him permanently from admission to the Bar, and we recommend that the Court of Appeals grant his application for admission.

s/s_____
Richard B. Nestler, Chair
Committee on Admissions
March 25, 2002

---

years old and another matter that did not involve the giving of legal advice. We do not believe this to be a material omission reflecting adversely upon his character.

8. The Court of Appeals has given significant weight to such opinion evidence in a number

of cases. *E.g., In re Baker,* 579 A.2d 676, 684 (D.C.1990); *In re Lindmark,* 747 A.2d 1148, 1150–51 (D.C.2000). *See also, In re Manville,* 494 A.2d 1289, 1297 (D.C.1985) ("opinions of character witnesses about the applicant's moral fitness" are factors to be considered.)